**FILED**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2010 AUG 19 A 10: 38

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JEREMIAH BUSH, individually and on behalf of all others similarly situated, | Case No. 3:10-cv-729-J-99MMH-JBT |
| Plaintiff, | CLASS ACTION |
| v. | |
| BURRITO GALLERY & BAR, LLC, a Florida limited liability company, and GALLERY RESTAURANT GROUP, LLC, a Florida limited liability company, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Comes now Jeremiah Bush, ("Plaintiff") on behalf of himself and all others similarly situated and alleges as follows:

### INTRODUCTION

1. In 2003, Congress passed, and the President signed, the Fair and Accurate Credit Transaction Act ("FACTA") to assist in the prevention of identity theft and credit and debit card fraud. In the statement provided by the President during the signing of the bill, the President declared that:

> This bill also confronts the problem of identity theft. A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs. With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft.

2. A main provision of FACTA (codified as 15 U.S.C. §1681c(g) of the Fair Credit Reporting Act) provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

3. The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. Although Defendants had up to three years to comply, Defendants have willfully violated this law and failed to protect Plaintiff and others similarly situated against identity theft and credit card and debit card fraud by continuing to print more than the last five digits of the card number and/or the expiration date on receipts provided to debit card and credit card cardholders transacting business with Defendants.

4. On June 3, 2008, House Bill HR 4008 (known as the so-called Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, §3(a), June 3, 2008, 122 Stat. 1566) (hereafter "Clarification Act") was signed into law by the President.

5. Specifically, Section 3(a) of the Clarification Act states, in relevant part:

> [F]or purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004 and the date of enactment of this subsection but otherwise complied with the requirements of Section 605(g) for such receipt shall not be in willful noncompliance with Section 605(g) by reason of printing such expiration date on the receipt.

6. Thus, the Clarification Act provided amnesty to those businesses which had been sued for violations of FACTA's prohibition against the printing of expiration dates on electronically printed receipts *between* December 4, 2004 and June 3, 2008. However, the Clarification Act is inapplicable to any merchant that accepts payment by credit and debit cards and who violates the law by printing expiration dates *from June 4, 2008 forward.*

7. Plaintiff, on behalf of himself and all others similarly situated, brings this action against Defendants based on Defendants' violation of 15 U.S.C. §§1681 *et seq.*

8. Plaintiff seeks, on behalf of himself and the class, statutory damages, punitive damages, costs and attorneys fees, all of which are expressly made available by statute, 15 U.S.C. §§1681 *et seq.*

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p.

10. Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) and 1400(a) in that this is the judicial district in which Defendants reside.

## PARTIES

11. Plaintiff, Jeremiah Bush, is and at all times relevant hereto was a resident of the State of Florida.

12. Defendant Burrito Gallery & Bar, LLC ("Burrito Gallery") is a limited liability company headquartered at 21 E. Adams Street, Jacksonville, Florida, and doing business as "Burrito Gallery" and/or "Burrito Gallery & Bar." Defendant Gallery Restaurant Group, LLC ("Gallery Restaurant Group") is a limited liability company headquartered at 21 E. Adams Street, Jacksonville, Florida, and which does business as and under the registered fictitious name "Burrito Gallery & Bar." "Defendants" means Burrito Gallery and Gallery Restaurant Group. Defendants are "person[s] that accept credit cards or debit cards for the transaction of business" within the meaning of FACTA.

13. Plaintiff is informed and believes and thereon alleges that all relevant times each defendant was the franchisor, franchisee, principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other defendants, and was engaged with some

or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each defendant acted pursuant to and within the scope of the relationships alleged above, that each defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other defendants.

## KNOWLEDGE REGARDING FACTA AND THE TRUNCATION OF EXPIRATION DATES

14. In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft. A critical part of this joint effort was the truncation of personal data from credit and debit card receipts presented to consumers at the point of sale.

15. On March 6, 2003, Visa CEO Carl Pascarella held a joint press conference with Senators Judd Gregg, Jon Corzine, Patrick Leahy and Dianne Feinstein to announce Visa USA's new account truncation program to protect consumers from identity theft. At the press conference, Mr. Pascarella stated:

> "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. *The card's expiration date will be eliminated from receipts altogether* . . . ."
>
> "The first phase of this new policy goes into effect July 1, 2003 for all new terminals. I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to the groundwork that we began together several years ago."
>
> \* \* \* \*
>
> "Visa USA is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft. After all, we share the same goals."

On July 9, 2003, L. Richard Fischer presented a written statement to the United States House of Representatives Committee on Financial Services on behalf of Visa USA, Inc., supporting the truncation requirements of what ultimately became FACTA. Therein, Mr. Fischer stated:

> "Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number *or the expiration date* upon receipts provided to cardholders at the point of sale . . . ."

16. Visa USA's agreements with the American merchants which accept Visa brand credit or debit cards are defined in part in a manual entitled Rules for Visa Merchants, Card Acceptance and Chargeback Management Guidelines ("Visa Merchant Rules"). The Visa Merchant Rules Manual includes a description of Visa's truncation requirements. For example, the 2006 edition of the Manual states:

> "Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt.
>
> After July 1, 2006, *the expiration date should not appear at all.* Existing POS terminals must comply with these requirements by July 1, 2006 . . . ."

17. The truncation standards set forth in the Visa Merchant Rules, which are part of the contract between Visa and the merchants which accept its debit and/or credit cards, served as the basis for what ultimately became the truncation requirements of FACTA.

18. In fact, Visa and Mastercard impose FACTA card number and card expiration number truncation requirements in their agreements with merchants, including Defendants, by

imposing monetary penalties on merchants for noncompliance. For example, under these Visa and Mastercard requirements, the first violation by a merchant results in a $5,000 penalty, and the fourth violation results in a $50,000 penalty. Where Visa or Mastercard find a willful or egregious violation, the penalty can be as high as $500,000.

19.     The Office of Thrift Supervision, United States Department of Treasury ("OTS"), is responsible, *inter alia*, for monitoring financial institution compliance with FACTA. Toward this end, the OTS publishes an Examination Handbook ("Handbook") which assists OTS field personnel when they perform an examination, or compliance audit, of a given financial institution. The February 2006 Edition of the Handbook states, in relevant part:

### Truncation of Credit and Debit Card Account Numbers

> Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number *and do not contain the expiration dates.*

21.     FACTA's requirement that merchants truncate credit and debit card expiration dates was phased in over a three year period. During the three year phase-in period, there was extensive publicity regarding the law's requirements.

22.     Many restaurant and retail trade associations apprised their merchant members that FACTA requires truncation of the entire expiration date and all but the last five digits of the cardholder account number.

23.     Merchants, including Defendants, were notified by Visa, Mastercard and other companies in the payment card industry of the above information concerning FACTA and, specifically, that FACTA prohibited the printing of more than the last five digits of the card number, and also prohibited the printing of the card expiration date, on point of sale receipts electronically printed by the merchants, and that the merchants, including Defendants, were

required to comply with FACTA. Upon information and belief, Defendants were merchants of Visa, Mastercard, and other companies prior to and at the time such notices were disseminated and therefore received notice of FACTA's requirements.

24. In May 2007, the FTC provided guidance to United States businesses, via a published business alert, that "[a]ccording to [FACTA], the electronically printed credit and debit card receipts you give your customers must shorten-or truncate-the account information. You may include no more than the last five digits of the card number, *and you must delete the card's expiration date.*" FTC Business Alert, May 2007 (http://www.ftc.gov/bcp/edu/pubs/business/alerts/alt007.shtm) (emphasis supplied).

### DEFENDANTS' KNOWLEDGE OF FACTA'S TRUNCATION REQUIREMENTS AND WILLFUL DISREGARD OF THEM

25. Defendants had actual knowledge of Visa's truncation requirements, specifically including the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale.

26. Defendants had actual knowledge of FACTA's truncation requirements, specifically including the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale.

27. Despite having knowledge and direct notice of FACTA's truncation requirements, as well as the truncation requirements of participants in the payment card industry such as Visa and Mastercard, Defendants chose to ignore such notice, and Defendants disregarded FACTA's provisions and continued to provide to the Plaintiff, and to those other consumers similarly situated, electronically printed receipts which contained more than the last five digits of the card account number and/or the card expiration date, despite such action being prohibited by FACTA.

28. Despite the unambiguous language of FACTA and the Clarification Act, and despite subsequent guidance from Visa and other companies in the payment card industry, the Office of Thrift Supervision, trade associations, the Federal Trade Commission, and courts of virtually all levels, and despite Defendants' explicit acknowledgement of FACTA's truncating requirements and agreement to comply with the same in their agreements with Visa (and possibly other payment card companies), Defendants willfully violated FACTA by continuing to print the expiration date of credit and debit cards on consumer receipts. Given the facts as alleged herein, Defendants' disregard of FACTA's requirements is, at a bare minimum, reckless and therefore willful. Based on the Clarification Act alone, which made explicitly clear that printing the expiration date on a credit or debit card receipt alone violates FACTA, the Defendants were reckless by continuing to engage in the very actions that the Clarification Act proscribed. *Murray v. New Cingular Wireless Services, Inc.*, 523 F.3d 719, 726-27 (7th Cir. 2008).

29. Defendants' acts and omissions as alleged herein were not isolated incidents or accidental oversights. Rather, Defendants, despite having actual and constructive knowledge of FACTA and its requirements, chose to intentionally or recklessly ignore FACTA's requirement that sensitive account information, including card expiration dates, be truncated on electronically printed receipts provided to customers at the point of sale.

## CLASS ALLEGATIONS

30. Plaintiff brings this class action on behalf of himself and all other consumers similarly situated pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

31.     Many federal courts have certified classes in cases seeking statutory damages for violations of FACTA as alleged herein. *See, e.g., Hammer v. JP's Southwestern Foods, LLC,* No. 08-0339-CV-W-FJG, 2010 WL 1006235, at *1 (W.D. Mo., Mar. 16, 2010) (Gaitan, J.) (certifying FACTA class); *Miller-Huggins v. Mario's Butcher Shop, Inc.,* No. 09C-3774, 2010 WL 658863 (N.D. Ill., Feb. 22, 2010) (granting motion to certify FACTA class); *Meehan v. Buffalo Wild Wings, Inc.,* No. 07-C-4562, 2008 WL 548767 (N.D. Ill., Feb. 26, 2008) (granting motion to certify FACTA class seeking statutory damages); *Halperin v. Interpark Inc.,* No. 07-C-2161, 2007 WL 4219419 (N.D. Ill., Nov. 29, 2007) (certifying FACTA class); *Medrano v. WCG Holdings, Inc.,* No. SACV 07-0506 JVS (RNBx), 2007 WL 4922525 (C.D. Cal., Oct. 26, 2007) (certifying FACTA class); *Redmon v. Uncle Julio's of Illinois, Inc.,* No. 07-C-2350, 2007 WL 656075 (N.D. Ill., March 7, 2008) (certifying FACTA class); *Troy v. The Red Lantern Inn, Inc.,* No. 07-C-2418, 2007 WL 4293014 (N.D. Ill., Dec. 4, 2007) (certifying FACTA class); *Cicilline v. Jewel Food Stores, Inc.* No. 07-CV-2333, 2008 WL 895682 (N.D. Ill., March 31, 2008) (certifying FACTA class); *Reynoso v. South County Concepts, Inc.,* No. SACV 07-373 JVS (RCx) (C.D. Cal., Oct. 26, 2007) (granting motion to certify FACTA class seeking statutory damages).

32.     Additionally, this Court and other Florida federal courts have certified class actions on other consumer claims seeking recovery of statutory damages. *See, e.g., Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697 (M.D. Fla. 2000) (granting motion for class certification on FDCPA and state claims); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 666-69 (M.D. Fla. 1999) (granting motion for class certification on FDCPA claims); *see also Hicks v. Client Services, Inc.,* No. 07-61822-CIV, 2009 WL 5479111 at *1 (S.D. Fla., Dec. 11, 2008) (granting motion for class certification on FDCPA statutory damages claim); *Agan v. Katzman &*

*Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) (granting motion for class certification on FDCPA and state law claims). The Eleventh Circuit has found class certification appropriate in consumer actions alleging statutory violations. *See, e.g., Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1327 (11th Cir. 2008) (in RESPA matter, affirming trial court's finding that class representative and putative class met each requirement of Rule 23(a), reversing trial court's denial of class certification under Rule 23(b), and determining proposed class satisfied Rule 23(b)(3)).

33. Plaintiff seeks to represent a class of persons to be defined as follows:

All consumers to whom Defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, on which Defendants printed more than the last five digits of the consumer's credit card or debit card number; and/or

All consumers to whom Defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after June 3, 2008, on which Defendants printed the expiration date of the consumer's credit card.

34. <u>Numerosity:</u> The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

35. Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the class described above.

36.     The exact size of the class and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to Defendants' sales and transaction records.

37.     Members of the class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notices, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by this Court.

38.     <u>Typicality:</u>  Plaintiff's claims are typical of the claims of the members of the class. The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful and willful conduct.

39.     Plaintiff and members of the class were each customers of Defendants, each having made a purchase or transacted other business with Defendants at an applicable time using a credit card and/or debit card. At the point of such sale or transaction with Plaintiff and members of the class, Defendants provided to Plaintiff and each member of the class a receipt in violation of 15 U.S.C. §1681c(g).

40.     <u>Common Questions of Fact and Law:</u>  There is a well-defined community of interest and common questions of fact and law affecting members of the class.

41.     The questions of fact and law common to the class predominate over questions which may affect individual members and include the following:

    a.     Whether Defendants' conduct of providing Plaintiff and the members of the class with a sales or transaction receipt whereon Defendants printed more than the last five digits of the credit card or debit

card and/or the expiration date of the credit card or debit card violated the FACTA, 15 U.S.C. §§1681 et seq.;

b. Whether Defendants' conduct was willful;

c. Whether Plaintiff and members of the class are entitled to statutory damages, punitive damages, costs and/or attorneys' fees for Defendants' acts and conduct.

42. <u>Adequacy of Representation:</u> Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

43. <u>Superiority:</u> A class action is superior to other available means for the fair and efficient adjudication of the claims of the class. While the aggregate damages which may be awarded to the members of the class are likely to be substantial, the damages suffered by the individual members of the class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced by or against any member of the class. The likelihood of the individual members of the class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the

resources of the parties and the court system, and would protect the rights of each member of the class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

44. **Disavowal of Unconstitutional Damages**. To the extent that any award of class-based statutory damages against Defendants might be adjudicated as violating Defendants' Due Process Rights under the United States Constitution, Plaintiff, on behalf of the putative class he is seeking to represent, expressly requests damages **only** to the fullest extent allowed under the Constitution of the United States.

## FIRST CAUSE OF ACTION

### For Violation of 15 U.S.C. §§1681 *et seq.*

### (On Behalf of Plaintiff and the Members of the Class)

45. Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

46. Plaintiff asserts this claim on behalf of himself and the class against Defendants.

47. Title 15 U.S.C. §1681c(g)(1) provides that:

. . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of transaction.

48. With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

49. With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

50. Defendants transact business in the United States and accept credit cards and/or debit cards in the course of transacting business with consumers such as Plaintiff and the members of the class. In transacting such business, Defendants use cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

51. On May 7, 2010, after the effective date of the statute, Defendants, at their restaurant location in Jacksonville, Florida, provided Plaintiff with an electronically printed receipt on which Defendants printed the expiration date of Plaintiff's credit or debit card.

52. Defendants, at the point of a sale or transaction with members of the class, provided, either: a) through use of a machine that was first put into use on or after January 1, 2005, at any time after such date; or b) through any machine at any time after December 4, 2006, each member of the class with one or more electronically printed receipts on each of which Defendants printed, for each respective class member, more than the last five digits of such member's credit card or debit card number and/or printed the expiration date of such member's credit or debit card.

53. As set forth above, FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

54. Defendants knew of, or should have known of, and were informed about the law, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on printing of expiration dates.

55. Despite knowing and being repeatedly informed about FACTA and the

importance of truncating credit card and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had up to more than three years to comply with FACTA's requirements, Defendants willfully violated and continue to violate FACTA's requirements by, *inter alia*, printing more than five digits of the card number and/or the expiration date upon the receipts provided to members of the class – consumers with whom Defendants transact business.

56. Most of Defendants' business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and/or the expiration date upon the receipts provided to the cardholders. Defendants could have readily done the same and in fact did so at other restaurants owned and operated by Defendants.

57. In contrast, Defendants willfully disregarded FACTA's requirements and continue to use cash registers or other machines or devices that print receipts in violation of FACTA.

58. Defendants willfully violated FACTA in conscious disregard of the rights of Plaintiff and the members of the class thereby exposing Plaintiff and the members of the class to an increased risk of identity theft and credit and/or debit card fraud.

59. As a result of Defendants' FACTA violations, Plaintiff and those other consumers similarly situated were exposed to an increased risk of identity theft. Plaintiffs, and those other consumers similarly situated, have suffered actual harm and would be entitled to pursue actual damages under 15 U.S.C. 1681, as well as statutory damages under 15 U.S.C. 1681n(a)(1)(A) in an amount of not less than $100 and not more than $1,000 for each violation, punitive damages

as a result of Defendants' willful FACTA violations, and reasonable attorney's fees and costs. However, Plaintiff does not seek to quantify or recover actual damages in this case, for either himself or other Class Members, as actual damages would be too difficult to quantify. As a result, Plaintiff and all other similarly situated consumers demand an award of statutory damages resulting from the violations alleged in this Complaint. Class Members with actual damages exceeding the statutory damages may, if they so desire, opt out of this action and litigate their claims independently.

60. As a result of Defendants' willful violations of FACTA, Defendants are liable to Plaintiff and each member of the class in the statutory damage amount of "not less than $100 and not more than $1000" for each violation. 15 U.S.C. §1681n(a)(1)(A).

61. As a result of Defendants' willful violations of FACTA, Plaintiff and the members of the class are entitled to recover costs of suit and their reasonable attorneys' fees. 15 U.S.C. §1681n(a)(3).

62. As a result of Defendants' willful violations of FACTA, Plaintiff and the members of the class are entitled to recover punitive damages. 15 U.S.C. §1681n(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a. An order certifying the class and appointing Plaintiff as the representative of the class, and appointing counsel for Plaintiff as counsel for the class;

b. An award to Plaintiff and the members of the class of statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A) for Defendants' willful violations (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

c. An award to Plaintiff and the members of the class of punitive damages pursuant to 15 U.S.C. §1681n(a)(2) (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

d.  Payment of costs of suit herein incurred pursuant to, *inter alia*, 15 U.S.C. §1681n(a)(3);

e.  Payment of reasonable attorneys' fees pursuant to, *inter alia*, 15 U.S.C. §1681n(a)(3);

f.  For other and further relief as the Court may deem proper.

Dated: August 18, 2010                     Respectfully Submitted,

**VOLPE, BAJALIA, WICKES, ROGERSON & WACHS**

*/s/ Caroline M. Prieto*
Michael L. Duncan (Trial Counsel)
Florida Bar No. 50946
Caroline M. Prieto
Florida Bar No. 70339
501 Riverside Avenue, 7th floor
Jacksonville, Florida 32202
(904) 355-1700
(904) 355-1797 (facsimile)